# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>            *Plaintiff*, )<br> )<br>v. )<br> )<br>JOSEF IBREHAM BYRD, )<br>            *Defendant*. ) | NO. 1: 13-CR-00218-GLR |

**CONSENT MOTION FOR**
**COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant JOSEF IBREHAM BYRD by his counsel, Gregory Dolin, and with the consent of the United States through the Assistant United States Attorney, respectfully requests that the Court grant this consent motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by Defendant's vulnerability to COVID-19. Mr. Byrd's health has significantly declined since appearing before the Court for sentencing on August 5, 2013. He is a 42-year-old man who suffers from a number of serious medical conditions, including Type II diabetes mellitus, hypertension, morbid obesity, and severe generalized joint pain. Mr. Byrd's medical issues have rendered him "essentially wheelchair bound." Exhibit A, Excerpt of Mr. Byrd's Medical Records at

1

9.[1]. Mr. Byrd's serious health issues place him squarely within the vulnerable population at heightened risk of getting extremely sick and potentially dying from COVID-19. In the event he is released, Mr. Byrd has a strong family support system release plan.

## STATEMENT OF FACTS

Mr. Byrd was charged in 2013 with a single count of "unlawful[] possess[ion] with the intent to distribute five kilograms or more of … cocaine" in violation of 21 U.S.C. § 841(a)(1). On July 1, 2013, Mr. Byrd entered a plea agreement and pleaded guilty to the indictment. He was sentenced on August 5, 2013 to the mandatory minimum term of incarceration which Congress has set at 120 months. *See* 21 U.S.C. § 841(b)(1)(A). Because Mr. Byrd was not released on bail following his arrest, his term of imprisonment was retroactive to his original arrest date of April 23, 2013. In addition to the term of imprisonment, the Court further sentenced Mr. Byrd to five years of supervised release following his release from confinement and imposed a special assessment of $100. Mr. Byrd's release date is presently projected to be January 27, 2022 or just over a year from the date of the present motion.

Given his severe medical conditions, nonviolent nature of his offense, and relatively short period of time remaining on his sentence, Mr. Byrd is now eligible to seek compassionate release under 18 U.S.C. § 3582(c)(1)(A) (the First Step Act).

---

[1] Pursuant to Fed. R. Civ. P. 26(c) and Loc. R. 105(11), the undersigned will seek to file these records under seal.

## ADMINISTRATIVE REMEDIES

Although Mr. Byrd has not exhausted his administrative remedies, courts have recently concluded that given the pressing nature of the pandemic, exhaustion of administrative remedies is not a prerequisite for reduction in sentence under the First Step Act. *See United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020) ("Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today."). As the *Haney* Court explained although "exhaustion requirements can conserve judicial resources . . . in these exceptional times, § 3582(c)(1)(A)'s exhaustion provision is having the opposite effect[, b]ecause . . . prisoners have inundated the BOP with requests for release [despite] the agency's inability to adjudicate their petitions quickly . . . ." *Id*. Because COVID-19 cases are on the rise with Mr. Byrd remaining particularly vulnerable, and because so little time is left on his sentence, this Court should not require him to wait an additional 30 days prior to adjudicating the present motion.

## ARGUMENT

Mr. Byrd's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. The Government does not contest these assertions. Moreover, the government and Defendant agree that Mr. Byrd's release does not pose a danger to the community,

and a balancing of the § 3553(a) factors with the risks to Mr. Byrd posed by COVID-19 warrants relief.

Mr. Byrd has several of the risk factors identified by the CDC and studies on those infected: morbid obesity, Type 2 Diabetes Mellitus, and hypertension. *See* CDC, *People Who Are at Higher Risk for Severe Illness*, https://bit.ly/3nOcdI0; *see also* Safiya Richardson *et al.*, *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area,* 323 J. Am. Med. Ass'n 2052 (2020), *available at*, https://bit.ly/3hcb2PS (finding that among 5,700 patients in New York City who were hospitalized with COVID-19, the most common underlying medical conditions were hypertension (56.6 percent), obesity (41.7 percent), and diabetes (33.8 percent)); *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) ("[A]s of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension.") (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 U.S. Dist. LEXIS 59211 (D. Md. Apr. 3, 2020)).

In addition to morbid obesity, Type 2 Diabetes Mellitus, and hypertension Mr. Byrd also suffers from severe generalized joint pain, Hematuria, Esophageal Reflux, and Radiculopathy. *See* Exhibit A at 44. This is not a complete list of all of his conditions but identifies all of the serious conditions that impact his everyday life. Mr. Byrd's health has continued to decline during his incarceration. He has been incarcerated since 2013 and his medical records reveal a significant

deterioration in his health. Prior to September 2017, Mr. Byrd's medical records describe him as "independent with functional mobility," *id.* at 243; however, by September of 2017, Mr. Byrd begun using a wheelchair or a rolling walker. *Id.* at 244. Since that time his ability to ambulate or even stand has decreased. *Compare id.* at 9 (July 29, 2020) ("Inmate is essentially wheelchair bound"), *with id.* at 17 (March 31, 2020) and 131 (Sept. 17, 2019). The request for reduction in sentence is based on combination of these conditions which leave him confined to his wheelchair and render him eligible for a reduction in sentence based on a debilitating medical condition.

It is also worth noting that as of the date of this motion, according to Bureau of Prison's own data, there have been at least 40 confirmed *active* COVID diagnoses (including 17 inmates and 23 staff) at FCI Beckley in Weaver, WV where Mr. Byrd is presently housed. *See* BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. It is also not clear whether these data represent the complete picture as there are often asymptomatic cases of COVID-19 in relatively healthy individuals who are therefore not tested and do not show up in the statistics. Such asymptomatic individuals are nonetheless infectious and pose a significant risk to individuals like Mr. Byrd.

Although the appearance of an FDA-approved vaccine may suggest that the end of the pandemic is within reach, government officials have consistently warned that wholesale vaccination is not likely to take place until the end of summer 2021

at the earliest. *See, e.g.*, Yelena Dzhanova, *Incoming Surgeon General Says Widespread Coronavirus Vaccination May Not Happen Until "Mid-Summer, Early Fall," Extending The Timeline By Months*, Bus. Insider (Dec. 20, 2020), https://bit.ly/34z4K84. In the meantime, the virus continues to spread at alarming rates.[2] According to the CDC both the weekly cases and the weekly deaths have shown a nearly continuous upwards trend since mid-September and mid-October respectively. CDC, *United States Forecasting*, https://bit.ly/3pjQdom and https://bit.ly/2KjlSI3. As of the date of this brief, the number of weekly cases is about *six times* what it was in mid-September, while the number of weekly deaths is nearly *four* times what it was in mid-October. *Id.* According to the CDC these numbers are likely to get worse over the next several weeks. *Id.*

## RELEASE PLAN

When released, Mr. Byrd will live with his brother Rashad B. Byrd at his brother's apartment located at 9915 Farm to Market 1960 Road W, Apt 608, Houston, TX 77070. Mr. Rashad Byrd has agreed to make the apartment available for Mr. Byrd and to help Mr. Byrd attend to his various medical problems. Mr. Byrd further agrees to submit to such restrictions and monitoring of his movements as will be required to reassure the Government and this Court that he does not pose any risk to the community.[3] To that end, Mr. Byrd does not object to the

---

[2] These data indicate how rapidly the disease is spreading. A month ago, BOP's website indicated only 20 active cases at FCI Beckley.

[3] Any such restrictions, as well as his brother's supervision, will assure that Mr. Byrd complies with the 14 day quarantine upon his release.

requirement that he remain confined to his brother's home through January 27, 2022, the date of his currently scheduled release; provided that this restriction takes into account his need to be seen by medical professionals on a regular basis.

At present, Mr. Byrd does not have any employment plans or prospects. However, in light of his medical condition, it is not clear whether Mr. Byrd is a candidate for gainful employment whenever he is released. Nonetheless, Mr. Byrd is willing to participate in any vocational rehabilitation program that the Government or this Court may require. And though such programs may be of limited use and availability while the public health emergency persists, Mr. Byrd will diligently follow the requirements imposed on him by this Court and/or the United States Probation Office.

In short, Mr. Byrd's release will protect his health, will not impose any additional risk on the community, and permit Mr. Byrd to continue his process of rehabilitation.

## CONCLUSION

Defendant Josef Ibreham Byrd has demonstrated extraordinary and compelling reasons for compassionate release, of which the Government does not oppose, and asks this Court to reduce his sentence to time served upon the condition that he serve a period of home confinement until January 27, 2022, the date of his

currently scheduled release, and upon such other conditions as this Court deems appropriate.

January 19, 2021

                                    Respectfully submitted,

                                    /S/
                              _____

*Gregory Dolin, Bar ID #21606*

Associate Professor of Law
University of Baltimore
School of Law
1420 N. Charles Street
Baltimore, MD 21201
(410) 837–4610
gdolin@ubalt.edu

        *Counsel for the Defendant*